# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:12cv822
#### [BR 10-32663, 11-3026, & 11-03163]

In Re: THE MCALPINE GROUP, LLC,    )
                                       )

           Debtor,            )

_____ )          **ORDER**
                                         )

EASTWOOD CONSTRUCTION, LLC,    )

           Plaintiff,         )

Vs.                               )

THE MCALPINE GROUP, LLC; and    )
MCALPINE-BARRINGTON OAKS, LLC,    )

          Defendants.      )
_____ )

CHARLES LINDSEY MCALPINE; and    )
MCALPINE-BARRINGTON OAKS, LLC,    )

          Plaintiffs,      )

Vs.                              )

PRINCETON PARTNERS, LLC; EASTWOOD )
CONSTRUCTION LLC; and JOSEPH    )
DORITY,                        )

          Defendants.      )
_____ )

       **THIS MATTER** is before the court on review of the Memorandum and Recommended

Order Partially Granting Motions for Summary Judgment (hereinafter "the recommendation")

(#1) entered by Honorable J. Craig Whitley, United States Bankruptcy Judge on December 12,

–1–

2012.  In accordance with Bankruptcy Rule 9033(b), The McAlpine Group, LLC, McAlpine-Barrington Oaks, LLC, and Charles Lindsey McAlpine (hereinafter collectively "McAlpine") timely filed Objections (#2) to the recommendation on January 15, 2013.  On February 1, 2013, Eastwood Construction, LLC and Joseph Dority (hereinafter collectively "Eastwood") filed their combined Response (#4) to McAlpine's Objections. Princeton Partners, LLC ("Princeton") also timely filed its Response (#6) to those objections.

## FINDINGS AND CONCLUSIONS

### I.    Applicable Standard of Review

Congress has mandated in 28 U.S.C. § 157(c)(1) that district courts conduct *de novo* review only in non-core bankruptcy proceedings. As to matters touching on a core proceeding, the bankruptcy court's findings of fact will not be overturned on appeal unless they are clearly erroneous, Bankr. R. 8013, and due regard will be given to the bankruptcy court's ability to evaluate the credibility of witnesses.  Id.; In re Biondo, 180 F.3d 126, 130 (4th Cir.1999). The conclusions of law of the bankruptcy court are, however, reviewed *de novo*.  Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir.2004).  Inasmuch as Judge Whitley has submitted  his Order as a recommended disposition of both core and non-core matters, to further judicial economy the court will conduct *de novo* review of the recommended Order in its entirety.  Section 157(c)(1) of Title 28 of the United States Code provides in pertinent part:

> [In a non-core proceeding related to a case in bankruptcy], the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).  Further, Rule 9033(d) of the Bankruptcy Rules provides that:

–2–

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Bankr.R. 9033(d). Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of Judge Whitley's recommendation.

## II. Discussion

In accordance with section 157 and Bankruptcy Rule 9033, the Court has conducted a *de novo* review of those portions of Judge Whitley's recommendation as to which McAlpine has specifically objected. In conducting *de novo* review, the court has considered the entire record transmitted to the court, including among other things, the Objections and Brief in Support , the 18 pages of supporting exhibits attached thereto, Exhibits (#2-1), and the additional exhibits. Exhibits (#3-1) through (#3-7). In addition, the court has also reviewed the "Evidentiary Submission" filed by Eastwood, which includes 246 pages of exhibits, Exhibits (#5-1) through (#5-14), and the exhibits filed in support of Princeton's Response, Exhibits (#6-1) through (#6-4). Finally, the court has accessed and reviewed relevant pleadings within the Bankruptcy Court's ECF system.

### A. Recommendations as to Eastwood's Claims

#### 1. First Claim for Relief: Fraudulent Foreclosure

Judge Whitley recommended that summary judgment be granted against Eastwood on such claim. Judge Whitley's determination is clearly consistent with the applicable facts and

–3–

current case law and Eastwood does not object to such recommend disposition of this claim. Such is, therefore, dismissed.

### 2. Second Claim for Relief: Breach of Contract

In order to state a claim for breach of contract under North Carolina law, the following essential elements must be alleged and, in response to a motion for summary judgment, must be supported with competent evidence:

(1) a legal obligation of plaintiff to the defendant;

(2) a violation or breach of that right or duty; and

(3) a consequential injury or damage to the defendant.

See Investment Properties v. Norburn, 281 N.C. 191 (1972). Further, North Carolina law provides, as follows:

> [w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court[,] and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

Piedmont Bank & Trust Co. v. Stevenson, 79 N.C.App. 236, 240 (internal citations omitted), aff'd per curium, 317 N.C. 330 (1986). Thus, '[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." Hartford Accident & Indemnity. Co. v. Hood, 226 N.C. 706, 710 (1946) (internal citations omitted).

After discussing why each affirmative defense raised by McAlpine (i.e., anticipatory repudiation, force majeure, and that McAlpine was never the intended contracting party to the Eastwood Contract) could not survive summary judgment, Judge Whitley recommended granting

– 4 –

Eastwood's claim for Breach of Contract. In support of such recommendation, Judge Whitley reasoned, as follows:

> There is no question that a valid contract existed. Under the terms of the Eastwood Contract, the McAlpine Group was required to complete twenty specification-ready lots on or before September 15, 2008. Eastwood Contract 1.L., AP #3026, ECF No. 2-4. Failure of the McAlpine Group to deliver the lots entitled Eastwood to declare the Contract in default and recover the $325,000 Deposit. Id. This language is clear and unambiguous . . . .
>
> The McAlpine Group failed to complete the required twenty lots by September 15, 2008 pursuant to the contract. McAlpine Dep. 80:24-81:18, July 2, 2012, AP #3163, ECF 51-1. This is a clear breach of the contract, which entitled Eastwood to terminate the contract and demand return of the deposit. Id. at 107:1-108:14.

Recommendation at 11.

### a. Anticipatory Repudiation Defense

As it did before the bankruptcy court, McAlpine contends that summary judgment is not appropriate on the Breach of Contract Claim because of Eastwood's anticipatory repudiation of that contract. Objections (#2) at 11. Despite such contention, the undisputed evidence of record reveals no distinct, unequivocal, and absolute refusal to perform by Eastwood, or that McAlpine treated any statement by Eastwood as a statement that could amount to a refusal by Eastwood to perform under the contract.

Instead, the undisputed evidence cited by McAlpine indicates that the parties remained very much engaged in negotiations through September 2009 when McAlpine failed to deliver buildable lots. Put another way, there simply is no evidence that McAlpine ever treated the contract as repudiated by Eastwood through the September 2009 deadline. Judge Whitley held:

> [t]o assert a valid defense of anticipatory repudiation, the repudiation must be of the "whole contract or of a covenant going to the whole consideration, and must be distinct, unequivocal, and absolute*[.]" Profile Invs. No. 25, LLC v. Ammons East Corp.*, 700 S.E.2d 232,235 (N.C. Ct. App. 2010) (internal citation omitted).

−5−

> Furthermore, even a "distinct, unequivocal, and absolute" "refusal to perform" is
> not a breach "unless it is treated as such by the adverse party." <u>Id.</u>

Recommendation at 12. As Judge Whitley held, the undisputed evidence clearly shows that despite any statements Eastwood may have made, McAlpine never treated the contract as repudiated by Eastwood. The court will, therefore, overrule McAlpine's objection, and affirm Judge Whitley.

### b. Force Majeure Defense

In defending against Eastwood's claim that McAlpine failed to deliver buildable lots, McAlpine asserts that its failure to perform was excused by force majeure. In considering such defense, Judge Whitley correctly held that the burden of proving such defense is on the party seeking to have their contractual performance (or non-performance) excused. The bankruptcy court accurately observed that, at the time Eastwood declared the breach, McAlpine failed to claim it had additional days under the contract to perform based on force majeure, and properly held that McAlpine failed to come forward with any evidence supporting such defense. Recommendation at 13-14.

Besides McAlpine's own assertions, the only evidence of delays caused by force majeure (weather delays) came from Mr. Gary Hill, whose testimony Judge Whitley rejected as speculative. <u>See</u> Recommendation at 14. Indeed, the deposition testimony of Mr. McAlpine shows that even years after the contract terminated the McAlpine parties did not know - - and apparently did not contemporaneously document - - what delays were caused by force majeure. <u>See</u> McAlpine Depo., at 85, 86, 90, 91, & 116. Further, Judge Whitley's rejection of Mr. Hill's testimony was appropriate, as such testimony was patently speculative. For example, Mr. Hill averred as follows: "I would estimate that as a result of the weather delays, the completion of the

– 6 –

lots was delayed by at least 60-75 days." Hill Aff. There was no evidence that such speculative statement was based on personal knowledge, to wit, that Mr. Hill observed conditions at the job site. Further, Mr. Hill was not designated as an expert witness by McAlpine. Indeed, the opinion does not even mention "excessive moisture," which is the only force majeure contemplated by the contract that could be relevant to the claimed weather delays. Judge Whitney, therefore, properly dismissed such affirmative defense in considering the Breach of Contract claim and McAlpine's objection thereto is overruled.

### c.      Intended Party

McAlpine also asserts that it cannot be held liable for breach of the contract as it was "MBO" that was intended to be bound by the contract and that insertion of McAlpine into the contract was a scrivener's error. Judge Whitely held that   "[t]he scant evidence the McAlpine Group brought forth on this issue, however, is not sufficient to raise a genuine issue of material fact and is barred by the parole evidence rule."

Having review the record, and applicable law, this court agrees with Judge Whitley's evidentiary determination as well as his application of current law to such determination. It is undisputed that MBO, the allegedly proper party to the contract, did not even exist at the time the contract was executed. While the contract provided that the "[s]eller is or will be the owner of [the] property," and it is undisputed that McAlpine never owned the development and later created MBO to hold the property after the contract was formed, the contract is not ambiguous as it is clear from the face of the agreement that McAlpine was the party that in fact obligated itself to perform thereunder. Thus, Judge Whitley properly disposed of this affirmative defense.

### d. Conclusion as to the Second Cause of Action

As Judge Whitley determined, there is not a genuine issue of material fact as to whether the contract was breached by McAlpine or as to whether McAlpine has any meritorious affirmative defenses that could bar Eastwood from prevailing on such claim as a matter of law. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to

> support or oppose a motion must be made on personal knowledge,
> set out facts that would be admissible in evidence, and show that
> the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must
> do more than simply show that there is some metaphysical doubt as to the
> material facts. In the language of the Rule, the nonmoving [sic] party must come
> forward with "specific facts showing that there is a *genuine issue for trial*."
> Where the record taken as a whole could not lead a rational trier of fact to find for
> the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel.

Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

Having considered the recommendation and the objections as to the Second Claim, the court affirms summary judgment in favor of Eastwood and against McAlpine (as more specifically recommended by Judge Whitley) and the imposition of judgment against the debtor in the amount of $325,000.00.

### 3.      Third Claim for Relief:  Unjust Enrichment

As to Eastwood's Third Claim for Relief (unjust enrichment), Judge Whitley held that "Eastwood is entitled to summary judgment against MBO on its unjust enrichment claim" because "MBO was the recipient of Eastwood's deposit, but MBO provided nothing to Eastwood in return." Recommendation at 16. Under North Carolina law,

> [t]o state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous.

Austin Hatcher Realty, Inc. v. Arnold, 2008 WL 2246675, 5 (N.C.App. 2008). Under the one recovery rule, however, Judge Whitley recommended that a separate monetary judgment not be imposed on such claim, but that MBO be held jointly and severally liable with McAlpine in the amount of $325,000.00.

-10-

McAlpine responsively argues that MBO should not be held liable under this claim based on a theory of election of remedies. Judge Whitley's recommendation fully appreciates the doctrine of election of remedies and has, accordingly, limited Eastwood to one recovery, with MBO sharing with McAlpine responsibility for such judgment. Thus, the remedy provided for in the Third Cause of action is merely equitable and McAlpine's objection is overruled.

### 4. Fourth Claim for Relief: Equitable Lien

As to Eastwood's Fourth Claim for Relief (equitable lien), Judge Whitley held that MBO used Eastwood's $325,000.00 deposit without authority to purchase the land making such tract subject to an equitable lien to prevent unjust enrichment. Recommendation at 16-17. While Judge Whitley recognized that the contract prohibited the imposition of an equitable lien against McAlpine, the party against which the lien was imposed, MBO, was not a party to the agreement. Judge Whitley went on to hold that while the lien claim is valid, Princeton's foreclosure on the property cuts off that equitable lien as a matter of law under Chapters 47-18 and 47-20 of the North Carolina General Statutes. N.C.Gen.Stat. §§ 47-18 & 47-20. No party has objected to such recommendation.

It appearing that Judge Whitley's determination is supported by the undisputed facts and wholly consistent with current law, the court will affirm such recommendation and dismiss the Fourth Claim for Relief for Equitable Lien as extinguished by foreclosure.

### B. McAlpine's Counterclaims Asserted Against Eastwood

### 1. First Counterclaim: Tortious Interference with Contract

In its First Counterclaim, McAlpine asserts against Eastwood a claim of tortious interference with contract. Judge Whitley held that the claim against Eastwood should fail as a

-11-

matter of law because Princeton did not breach the Princeton Contract, Horton did not breach the Horton Contract, and Eastwood acted with justification. The elements of tortious interference with contract are:

> (1) the existence of a valid contract between plaintiff and a third party; (2) knowledge by defendant of the contract; (3) acts by defendant to intentionally induce the third party not to perform the contract; (4) defendant's acts were committed without justification; and (5) actual damage to the plaintiff.

Barker v. Kimberly-Clark Corp., 136 N.C.App. 455, 462 (2000) (citing Childress v. Abeles, 240 N.C. 667, 674 (1954)). There can be no "tortious" interference where the interference complained of was justified or privileged. Peoples Security Life Ins. Co. v. Hooks, 322 N.C. 216 (1988). Indeed, competition in business may serve as a justification for interference in another's business relations. Id. at 221. Thus, if a party acts with a legitimate business purpose, such as competition, their actions are privileged. Robinson, Bradshaw & Hinson, P.A. v. Smith, 498 S.E.2d 841, 851 (N.C. App. 1998) ("Bad motive is the gist of the tortious interference action.").

While interposing other objections, McAlpine fails to Judge Whitley's recommendation that Eastwood acted with justification. Judge Whitley determined that McAlpine's claim of tortious interference based on the *lis pendens* it filed and the equitable lien claim made in the adversary proceeding are not "wrongful acts" that would support a claim of tortious interference. Indeed, as Judge Whitley also found, "the filing of a civil suit to establish a claim, whether the claim be ultimately determined to be well founded or not" is not wrongful or illegal. Austin v. Wilder, 215 S.E.2d 794, 797 (N.C. Ct. App. 1975). Indeed, McAlpine has not shown in any manner that any such claim by Eastwood violates any provision of Rule 11(b), Fed.R.Civ.P. Judge Whitley's determination is fully supported by current law. Austin, supra.

-12-

McAlpine also asserts tortious interference with a contract McAlpine had with Princeton because Eastwood discussed lot sales with Princeton while Princeton was under contract with McAlpine. Judge Whitley determined that Eastwood's conduct in discussing a potential purchase with Princeton is not actionable, a determination which is consistent with well settled North Carolina law, S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC, 659 S.E.2d 442 (N.C. Ct. App. 2008) (competition among developers in attempting to purchase property for development not actionable). Such determination is affirmed.

### 2. Second and Third Counterclaims: Conspiracy and Unfair Competition

Inasmuch as Eastwood's actions were lawful as a matter of North Carolina law, McAlpine's additional claims of conspiracy and unfair competition must also fail as a matter of law. Further, no claim exists under North Carolina law for civil conspiracy. While there is no freestanding cause of action for "civil conspiracy," the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

(1)     an agreement between two or more persons to commit a wrongful act;

(2)     an act in furtherance of the agreement; and

(3)     damage to the plaintiff as a result of the wrongful act.

Henderson v. LeBauer, 101 N.C. App. 255, 260 (1991). As this district has recognized, however, this claim cannot be brought independent of a properly alleged claim for underlying wrongdoing, making such claim subject to dismissal if the underlying claim for wrongful conduct is dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 3:06 CV 259 (W.D.N.C. Dec. 16, 2008) (Reidinger, J.). Judge Whitley's recommendation will be affirmed and the

-13-

second and third counterclaims as asserted against Eastwood will be dismissed.

### C.      McAlpine's Claims Against Princeton

It is undisputed that Princeton, Lindsey McAlpine, and MBO are all parties to a contract executed October 6, 2009, concerning the land intended to be used to develop Barrington Oaks (hereinafter "the property").   This contract arose after the relationship between Eastwood and McAlpine broke down when buildable lots were not delivered by McAlpine by the contract deadline.  Judge Whitley's recitation of the facts are fully supported by the record, and abstracted herein to aid review.

The loan from Carolina Bank (evidenced by the Note and Deed of Trust on the Barrington Oaks Property) was assigned to Princeton effective September 30, 2009.   Such was not happenstance, inasmuch as Princeton and the McAlpine Parties had prearranged a transaction and entered into a contract (the "Princeton Contract") on October 6, 2009 whereby Princeton would purchase the Loan and Deed of Trust from Carolina Bank, foreclose the Deed of Trust, and take title to the Property free and clear of all of the liens on the Property.   Such liens included the construction liens arising from improvement of the property and Eastwood's equitable lien claim/*lis pendens*.

Pursuant to the Princeton contract, Princeton foreclosed, bid the debt, and took title to the property on December 23, 2009. Under that contract, Mr. McAlpine or one of his companies (which includes the Debtor) would obtain a share of the sale price, a management fee, and potential ownership of individual lots in exchange for managing and marketing the Property. Princeton had the option of terminating the contract if "less than ten lots are sold during any consecutive nine month period." The contract also addressed the personal guaranty that Mr.

-14-

McAlpine had given on the loan with Carolina Bank and which had also been assigned to Princeton. As partial consideration for Mr. McAlpine's agreeing to market the lots within the Barrington Oaks Property, Princeton also agreed to limit his personal liability under the Guaranty to $25,000.

Due to its acquired ownership of the property, on April 27, 2010, Princeton was added as a defendant by Eastwood in its action against the McAlpine parties. Princeton responded with a motion to dismiss that claim. While both motions were granted, prior to the entry of the order, on June 18, 2010, Eastwood filed a second notice of *lis pendens* in which it sought to cure the procedural deficiencies attendant to its first *lis pendens*. At the time Princeton and McAlpine entered into the Princeton Contract, MBO entered into a contract with D.R. Horton for the sale of lots in the Barrington Oaks Property. The Horton Contract was expressly contingent on the outcome of the litigation among Eastwood, the McAlpine Group, and MBO. D.R. Horton eventually decided it did not want to purchase the property and the McAlpine parties were unable to find another buyer. Princeton terminated the Princeton Contract upon the expiration of the first nine-month period as less than ten lots were sold during that period. In December of 2010, Eastwood entered into a contract with Princeton to purchase the property.

### 1.    First Claim for Relief: Negligent Breach of Contract

McAlpine first asserts that it is entitled to an award of money damages as Princeton was negligent in its performance of the contract.  The essential elements of a cause of action for negligence are duty, breach of duty, proximate cause, and damages.  Camalier v. Jeffries, 340 N.C. 699, 706 (1995).  In order to recover, however, "all damages must flow directly and naturally from the wrong, and . . . they must be certain both in their nature and in respect to the

cause from which they proceed." <u>People's Center, Inc. v. Anderson</u>, 32 N.C.App. 746, 748 (1977) (citation omitted). It is well settled in North Carolina that there is no cause of action for "negligent breach" of a contract. <u>Berkeley Fed. Sav. and Loan Assoc. v. Terra Del Sol</u>, 433 S.E.2d 449, 457-58 (N.C. Ct. App. 1993). As to the alleged negligence of Princeton, to wit, its failure to provide marketable title to the property, there can be no cause of action for "negligent breach of contract." McAlpine has not objected to Judge Whitley's recommendation that summary judgment be granted on such claim and such recommendation is affirmed.

### 2.    Second Claim for Relief: Brach of Contract

Summary judgment on a breach of contract claim is appropriate "where an agreement is clear and unambiguous and no genuine issue of material fact exists." <u>Epes v. B.E. Waterhouse, LLC</u>, 728 S.E.2d 390, 393 (N.C.App. 2012). Judge Whitley found that the contract at issue allowed Princeton to terminate the agreement if 10 lots were not sold by McAlpine within nine months, or by July 2010. As *no* sales occurred within the period specified by the contract, Princeton lawfully terminated the agreement without payment to McAlpine. <u>Millis Constr. Co v. Fairfield Sapphire Valley, Inc</u>. 86 N.C. App. 506, 510 (1987). McAlpine has not objected to such recommendation, and this court finds such recommendation to be fully supported by the record as well as current case law. Judge Whitley's recommendation that summary judgment be granted on the Second Cause of Action is affirmed.

### 3.    Third Claim for Relief: Tortious Interference with Contract

For the same reasons discussed in regards to McAlpine's tortious interference claim asserted against Eastwood, <u>supra</u>, Judge Whitley has recommended that summary judgment be granted on such claim. For the same reasons discussed above as to the tortious interference

-16-

claim asserted against Eastwood, McAlpine's objection is overruled and Judge Whitley's recommendation is affirmed.

### 4. Fourth Claim for Relief: Civil Conspiracy

For the same reasons discussed in regards to McAlpine's civil conspiracy claim asserted against Eastwood, _supra_, Judge Whitley has recommended that summary judgment be granted on McAlpine's civil conspiracy claim against Princeton. For the same reasons discussed above as to the civil conspiracy claim asserted against Eastwood, McAlpine's objection is overruled and Judge Whitley's recommendation is affirmed.[1]

### 5. Fifth Claim: Unfair and Deceptive Trade Practices

Judge Whitley has recommended that summary judgment be granted against McAlpine on its unfair and deceptive trade practices claim asserted against Princeton. A state-law claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.Gen.Stat. §75-1.1(a). The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). To state a cause of action under the UDTPA, a plaintiff must allege the following:

(1)     conduct constituting an "unfair or deceptive act or practice;"

(2)     conduct "in or affecting commerce," and

(3)     that such conduct proximately caused actual injury to plaintiff.

---

1     As no independent cause of action exists, it was not error as McAlpine claims for Judge Whitley to not discuss evidence McAlpine produced as there is no requirement under Rule 56 for a court to determine whether there is a "genuine issue of material fact" on a claim that does not exist as a matter of law.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996).

Under Chapter 75-1-1 of the North Carolina General Statutes, a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). A cause of action for unfair and deceptive trade practices under Section 75-1-1 can be asserted as a distinct cause of action from a breach of contract claim. Branch Banking and Trust Co. v. Thompson, 107 N.C.App. 53, 62 (1992). To do so, however, a plaintiff must show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." Id.

Even where such a claim is made, it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Broussard v. Meineke Discount Muffler Shops, 155 F.3d 331, 347 (4th Cir. 1998)(citation omitted). In this case, McAlpine has not shown egregious or aggravating circumstances attending the alleged breach of contract.

As McAlpine has not objected and it appearing that the recommendation is fully consistent with applicable law, the court will affirm Judge Whitley's recommendation that summary judgment be granted on this claim.

### D. Princeton's Counterclaims Against McAlpine

#### 1. First Counterclaim: Payment of the Promissory Note

The loan from Carolina Bank (evidenced by the Note and Deed of Trust on the Barrington Oaks Property) was assigned to Princeton effective September 30, 2009. Judge

-18-

Whitley recommended that, based on such counterclaim, Princeton is now entitled to recover on such promissory note from MBO. It is undisputed that Princeton is the holder in due course of such negotiable note and that such note is now in default. The central issue dealt with by Judge Whitley was what amount was due and owing and after discussing claims of offset and why such were inapplicable, Judge Whitley concluded, as follows:

> It is undisputed that Princeton Partners is the holder of the Note, that the Note is in default, that the foreclosure sale yielded less than the amount of the Note, and that Princeton is entitled to a deficiency judgment against MBO. Thus, Princeton is entitled to the remaining balance on the note, $362,125.87, accrued interest as of August 22, 2012, $72,986.40, and interest thereafter at the rate of 7.5% per annum until the date of judgment.

Recommendation at 31. Judge Whitley's recommendation is affirmed as it is wholly consistent with current case law and supported by the record.

### 2. Second Counterclaim: Guaranty

While Judge Whitley found that Princeton was entitled to recover against Mr. McAlpine on his guaranty, such recovery was found to be limited to $25,000.00 based on paragraph two of the Princeton contract, which effectively limited Mr. McAlpine's exposure. Mr. McAlpine objects to such recommendation and argues that he has no liability on his personal guaranty due to the termination of the agreement. The same language which limited his guaranty to $25,000.00 also provided that "[t]he Guaranty Claim shall survive the termination of this Agreement unless satisfied pursuant to the terms of Paragraph Five." Princeton Contract 2, AP #3163, ECF No. 55-2. There being no evidence that such terms were satisfied, Mr. McAlpine's objections to such recommendation are overruled and Judge Whitley's recommended disposition of this claim is affirmed.

-19-

# ORDER

**IT IS, THEREFORE, ORDERED** that the Objections (#2) are **OVERRULED**, the
Memorandum and Recommended Order Partially Granting Motions for Summary Judgment (#1)
is **AFFIRMED** in its entirety, and the following Final Order and Judgment is entered:

# FINAL ORDER and JUDGEMENT

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** as follows:

**(1)**    **In Adversary Proceeding No. 11-3026 (AP #26):**

(a)    as to Eastwood's First Claim for Relief (Declaratory Judgment/Fraudulent
Foreclosure), the McAlpine Parties' Motion for Summary Judgment is GRANTED;

(b)    as to Eastwood's Second Claim for Relief (Breach of Contract), Eastwood's
Motion for Summary Judgment against the McAlpine Group is **GRANTED** and the
McAlpine Parties' Cross Motion for Summary Judgment is **DENIED**.

(c)    as to Eastwood's Third Claim for Relief (Unjust Enrichment), Eastwood's Motion
for Summary Judgment against MBO is GRANTED and the McAlpine Parties'
Cross Motion for Summary Judgment **DENIED**;

(d)    as to Eastwood's Fourth Claim of Relief (Equitable Lien), Eastwood's Motion
for Summary Judgment is PARTIALLY **GRANTED** and otherwise **DENIED** and the
McAlpine Parties' Motion for Summary Judgment is **PARTIALLY DENIED** and
otherwise **GRANTED**;

(e)    as to the McAlpine Parties' First Counterclaim (Tortious Interference with

Contract), Eastwood's Motion for Summary Judgment is **GRANTED** and the McAlpine Parties' Motion for Summary Judgment is **DENIED**;

**(2)     In Adversary Proceeding No. 11-3163 (AP #63):**

(a)     as to the McAlpine Parties' First Claim for Relief (Negligence), Princeton's Motion for Summary Judgment is **GRANTED**;

(b)     as to the McAlpine Parties' Second Claim for Relief (Breach of Contract), Princeton's Motion for Summary Judgment is **GRANTED**;

(c)     as to the McAlpine Parties' Third Claim for Relief (Tortious Interference with Contract), Princeton's and Eastwood's Motions for Summary Judgment are **GRANTED** and the McAlpine Parties' Cross Motion for Summary Judgment are **DENIED**;

(d)     as to the McAlpine Parties' Fourth Claim for Relief (Civil Conspiracy), Eastwood's and Princeton's Motions for Summary Judgment are **GRANTED** and the McAlpine Parties' Cross Motion for Summary Judgment is **DENIED**;

(e)     as to the McAlpine Parties' Fifth Claim for Relief (Unfair and Deceptive Trade Practices), Eastwood's and Princeton's Motions for Summary Judgment are **GRANTED**;

(f)     as to Princeton's First Counterclaim (Promissory Note), Princeton's Motion for Summary Judgment is **GRANTED** and the McAlpine Parties' Motion for Summary Judgment is  **GRANTED**, but recovery is limited by the disposition hereinafter  of the Guaranty; and

(g)     as to Princeton's Second Counterclaim (Guaranty), Princeton's Motion for Summary Judgment is **PARTIALLY GRANTED** and otherwise **DENIED** and the

McAlpine Parties' Motion for Summary Judgment **PARTIALLY GRANTED** and

otherwise **DENIED** and Princeton is limited to recovering $25,000.00 against Mr.

McAlpine on the Promissory Note.


Signed: February 15, 2013

Max O. Cogburn Jr.
United States District Judge